[No. 18689-6-II.   Division Two.   June 28, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. GARY POWELL CHESTER, *Appellant*.

*Wayne C. Fricke* and *Law Offices of Monte E. Hester, Inc., P.S.*, for appellant.

*John W. Ladenburg, Prosecuting Attorney,* and *Barbara L. Corey-Boulet, Deputy,* for respondent.

BRIDGEWATER, J. — Gary P. Chester appeals his jury conviction of sexual exploitation of a minor, with a special finding of sexual motivation, for concealing a video camera beneath his 14-year-old stepdaughter's bed and filming her naked. I hold there was insufficient evidence of causation, and reverse.

While his 14-year-old stepdaughter was in the shower, Chester concealed a video camera beneath her bed. The camera filmed her nude body as she dressed, unaware of the camera. The stepdaughter discovered the video camera, the mother viewed the tape and called the police, and Chester was arrested. Chester told police that he videotaped his stepdaughter as a "dumb joke," and that he did not consider her as a sex object. Chester later indicated he knew the tape would record her in an undressed state.

## I

Chester raises several constitutional challenges to the statutes involved, RCW 9.68A.011(e) and RCW 9.68A.040. The challenges he raises are those of constitutional vagueness and overbreadth. These challenges have been discussed and rejected by the Supreme Court and our court. *State v. Farmer,* 116 Wn.2d 414, 421, 805 P.2d 200, *modified,* 812 P.2d 858 (1991); *State v. Bohannon,* 62 Wn. App. 462, 467, 814 P.2d 694 (1991).

## II

Chester contends there is insufficient evidence to

support his conviction. In determining whether sufficient evidence supports a conviction, "[t]he standard of review is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.*' " *State v. Olson*, 73 Wn. App. 348, 357-58, 869 P.2d 110, *review denied*, 124 Wn.2d 1029 (1994) (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)).

Chester was charged with the sexual exploitation of a minor in violation of RCW 9.68A.040(1)(b) and (c). RCW 9.68A.040 states:

(1) A person is guilty of sexual exploitation of a minor if the person:

(a) Compels a minor by threat or force to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance;

(b) Aids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance; or

(c) Being a parent, legal guardian, or person having custody or control of a minor, permits the minor to engage in sexually explicit conduct, knowing that the conduct will be photographed or part of a live performance.

RCW 9.68A.040.

RCW 9.68A defines "[s]exually explicit conduct" to include behavior recognized as sexually explicit: intercourse, masturbation, penetration of the vagina or rectum by any object. RCW 9.68A.011(3)(a)-(c). The statute also defines behavior that becomes sexually explicit when engaged in "for the purpose of sexual stimulation of the viewer," including sadomasochistic abuse, defecation, urination, genital touching, and "[e]xhibition of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor." RCW 9.68A.011(3)(d)-(g). The statute, aimed at extinguishing the

market for sexually explicit materials featuring children, legitimately attempts to protect children from being abused as subjects of such materials. Chester was charged under the "exhibition of the genitals" definition of sexually explicit conduct.

I begin my analysis of the sufficiency of the evidence with the observation that there are two components of every crime: the criminal act, and the criminal state of mind. *State v. Utter*, 4 Wn. App. 137, 139, 479 P.2d 946 (1971). In sexual exploitation of a minor, the criminal state of mind is defined by the phrase, "knowing that such conduct will be photographed or part of a live performance." RCW 9.68A.040(1)(b); RCW 9.68A.040(c). Assuming that his stepdaughter's conduct was "sexually explicit" within the meaning of the statute, there is sufficient evidence in this case that Chester had the requisite criminal state of mind: a rational trier of fact could find beyond a reasonable doubt that Chester knew his stepdaughter's conduct would be photographed when Chester took affirmative steps to photograph her. At issue in this case is whether there is sufficient evidence Chester performed the criminal act required by the statute.

A criminal act may be described as both an affirmative act, or the omission of a possible and legally required performance. *Utter*, 4 Wn. App. at 140. Sexual exploitation of a minor describes the criminal act in pertinent part as when the perpetrator aids, invites, employs, authorizes, or causes, RCW 9.68A.040(b), or a parent permits, RCW 9.68A.040(c), a minor to engage in sexually explicit conduct. In order to discern what the Legislature intended when it enacted the above,

> we must first look to the plain meaning of the words used in the statute. *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990). In that regard, we are duty-bound to give meaning to every word that the Legislature chose to include in a statute and to avoid rendering any language superfluous. *Wright v. Engum*, 124 Wn.2d 343, 352, 878 P.2d 1198 (1994) ("We do not interpret statutes so as to render any language superflu-

ous.") (citing *Yakima County (West Valley) Fire Protection Dist. 12 v. Yakima*, 122 Wn.2d 371, 858 P.2d 245 (1993)). See also *City of Seattle v. McCready*, 123 Wn.2d 260, 280, 868 P.2d 134 (1994) (stating that it is "the settled practice of construing statutes to avoid superfluous language") . . .

*City of Seattle v. Williams*, 128 Wn.2d 341, 348-49, 908 P.2d 359 (1995). Statutes should be construed to effect their purpose, and to avoid unlikely, absurd, or strained consequences. *Ski Acres, Inc. v. Kittitas County*, 118 Wn.2d 852, 857, 827 P.2d 1000 (1992); *State v. Rhodes*, 58 Wn. App. 913, 919, 795 P.2d 724 (1990).

▇▇▇ The statute contains several verbs that describe the perpetrator's threshold criminal act. Where a statute does not define a nontechnical word, we may look to the dictionary for guidance. *State v. Pacheco*, 125 Wn.2d 150, 154, 882 P.2d 183 (1994). "Aid" means to "give help or support to." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 44 (1969). "Invite" means both to "offer an incentive or inducement to" and "provide opportunity or occasion for." WEBSTER'S, at 1190. "Employ" means to "use or engage the services of." WEBSTER'S, at 743. "Authorize" means to "to endorse, empower, justify, or permit by or as if by some recognized or proper authority." WEBSTER'S, at 146. "Cause" may be given its ordinary meaning, without resort to a dictionary definition. "Permit" has several relevant dictionary definitions. Primarily, it means "to consent to expressly or formally." WEBSTER'S, at 1683. A more contemporary dictionary than that previously cited also defines "permit" as "[t]o afford opportunity" or "to allow." AMERICAN HERITAGE DICTIONARY 924 (2d college ed. 1985). All of the statutory verbs include a definition that the perpetrator take some direct action to induce a minor "to engage in sexually explicit conduct." Secondary definitions of the terms "invite" and "permit" suggest that one may commit the crime of sexual exploitation as a voyeur, i.e., by providing an opportunity for or allowing the minor to engage in sexually explicit conduct, knowing it will be photographed.

There is no evidence that Chester took an affirmative act to cause his daughter's conduct under either RCW 9.68A.040(b) or (c). Thus, the issue is whether, as a voyeur, Chester could violate the statute.

I conclude that the Legislature did not intend to impose criminal liability on a parent who does nothing to induce his child's conduct, regardless of whether the parent photographs or observes the child's behavior. I glean this in part from the plain language of the statute: all of the terms denote some direct act influencing the minor's behavior. Although secondary definitions of "invite" and "permit" suggest that opportunistic voyeurism may be punished, if the Legislature had meant that a parent merely photographing their nude child could be held criminally liable, it would have said so clearly and plainly. It did not.

I emphasize that the statute does not criminalize the act of photographing — the photography relates to the criminal state of mind. The act of photographing a child undressing, urinating, defecating, or masturbating does not make the photographer's act criminal under the statute as currently worded. To be a criminal act, there must be evidence that someone other than the minor induced the minor's behavior. I hold that RCW 9.68A.040 requires a perpetrator to take some affirmative act that induces the minor to engage in sexually explicit conduct. A parent could be held criminally liable under subsection (c) only when the parent gives a third party express permission to sexually exploit the parent's child. In reaching this holding, I am mindful that statutes that impose criminal liability for an omission of a legally required performance are held to a higher standard of notice, *see Lambert v. California*, 355 U.S. 225, 78 S. Ct. 240, 2 L. Ed. 2d 228 (1957), and that criminal statutes that are ambiguous are to be strictly construed in favor of the defendant, *State v. Wissing*, 66 Wn. App. 745, 753, 833 P.2d 424, *review denied*, 120 Wn.2d 1017 (1992).

The State argues that when photographs are taken or

the child's nudity is observed for the purpose of sexual stimulation of the viewer, the statute is satisfied. Such an interpretation unreasonably strains the plain language of RCW 9.68A.040(a) and (b). I do not address today whether such behavior may be made criminal by our Legislature. I hold that the act of photographing a nude minor cannot satisfy the threshold requirements of RCW 9.68A.040(a) and (b) without sufficient evidence a perpetrator took direct action to induce the minor to engage in sexually explicit conduct. The Legislature did not intend that a parent could violate subsection (c) without evidence that someone violated either subsection (a) or (b). When the parent is the only actor who has induced the conduct of the minor, that parent can be convicted only under RCW 9.68A.040(a) or (b). To infer personal gratification from the parent's act of watching or photographing, without more, extends the reach of this statute to parental conduct the Legislature did not intend to prohibit.

This holding is not inconsistent with *Bohannon* or *Farmer*. We noted in *Bohannon* that a person could be guilty of sexual exploitation of a child if that "individual [took] sexually explicit photographs of a child at a time when the child was unaware that the pictures were being taken." *Bohannon*, 62 Wn. App. at 472. In *Farmer*, the court described the criminal act of the defendant to include taking "nude photographs . . . in a variety of sexually suggestive poses," and "a number of suggestive and sexually explicit photographs." *Farmer*, 116 Wn.2d at 418. It is clear from the opinions that both Bohannon and Farmer influenced the behavior of their minor subjects. In both *Bohannon* and *Farmer*, although not expressly addressed, we observe the State was required to demonstrate with sufficient evidence that the photographer "posed" the minor in order to show a criminal act was committed. "Posed" is not satisfied by showing a strategic placement of the camera, because the phrase "engage in" refers to the conduct of the child, not the photographer. "Posed" may be satisfied, however, with evidence a sleeping child's position or state of dress was altered by the photographer.

This clarifies the above dicta in *Bohannon*. Chester's act of videotaping his stepdaughter was inappropriate, even morally reprehensible. But our Legislature has thus far not criminalized a parent's surreptitious videotaping of his or her nude child. Applying the statute to Chester, I hold there was insufficient evidence that he violated RCW 9.68A.040(b) or (c). Under subsection (b), there is no evidence that Chester induced his daughter's behavior in any way. Under subsection (c), there is no evidence that someone violated subsection (a) or subsection (b), and, therefore, no evidence that Chester gave someone express permission to do so. The failure to prove any causal link between Chester's behavior and his stepdaughter's conduct is the deficiency in the State's case. At most, Chester took advantage of his stepdaughter's inevitable conduct — her undressing — to knowingly photograph her. No person committed an act prohibited in either RCW 9.68A.040(a) or (b); and, without this, violation of the statute is impossible.

We do not condone Chester's despicable act, but are constrained to find under the statute there was insufficient evidence to support the conviction. Because of our disposition, we need not address the remainder of Chester's challenges. We reverse.

MORGAN, J. (concurring) — The defendant concealed a video camera in his minor stepdaughter's bedroom. It videotaped her nude body as she was dressing. He did nothing to cause her to act as she did. She was following her morning routine for getting dressed, and he was engaging in photographic voyeurism.

The defendant was charged and convicted under RCW 9.68A.040. That statute states:

(1) A person is guilty of sexual exploitation of a minor if the person:

(a) Compels a minor by threat or force to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance;

(b) Aids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance; or

(c) Being a parent, legal guardian, or person having custody or control of a minor, permits the minor to engage in sexually explicit conduct, knowing that the conduct will be photographed or part of a live performance.

RCW 9.68A.040.

To convict under this statute, the State must establish (1) that a minor engaged in "sexually explicit" conduct; (2) that the defendant knew the conduct would be photographed or part of a live performance; and (3) that the defendant compelled, aided, employed, authorized, caused, or, if a parent or legal guardian of the minor, permitted the conduct. Clearly, the State has established the second and third propositions in this case. It has also established that the stepdaughter was a minor. Hence, the issue is whether the stepdaughter engaged in "sexually explicit" conduct, as opposed to some other kind of conduct.

The term "sexually explicit conduct" is defined, insofar as pertinent here, as an "[e]xhibition of the genitals or unclothed pubic or rectal areas . . . for the purpose of sexual stimulation of the viewer." RCW 9.68A.011(3)(e). To apply this definition in a given case, it is necessary to ascertain (1) whether there was an exhibition of the genitals or unclothed pubic or rectal areas, and (2) whether the exhibition was for the purpose of the sexual stimulation of the viewer. In the present case, it is undisputed that the stepdaughter unwittingly "exhibited" her unclothed pubic area to the camera. Thus, the only question to be decided is whether the exhibition was "for the purpose of sexual stimulation of the viewer."

Necessarily, an exhibition's purpose is the purpose of the person who initiates the exhibition. If considered independently of its initiator, an exhibition is inanimate and lacks any "purpose" of its own.

Because an exhibition's purpose is the purpose of its initiator, the first step toward analyzing whether an exhibition was "for the purpose of sexual stimulation of the viewer" is to identify the exhibition's initiator. Under the statute's careful and apparently intentional wording, that person can be the defendant, a third person, or even the minor; but whoever that person is, his or her purpose must have been to sexually stimulate the viewer.

These concepts play a practical and fundamental role in the statute's overall design, for they are the mechanism by which the statute distinguishes between exploitation and voyeurism. By broadly defining who the exhibition's initiator can be, the statute's drafters attempted to reach all or most instances of commercial and private exploitation. By requiring that the initiator have a purpose of stimulating one or more viewers, however, the statute's drafters attempted to exclude situations involving voyeurism (*i.e.*, situations in which no one acts for the purpose of sexually stimulating a viewer, but a viewer sees the conduct and, in his or her own mind, regards it as sexually stimulating).

In this case, the defendant was not the initiator of the minor's conduct, for he did not affect it in any way. The minor did not know the defendant's camera was present, and she acted just as she would have had the camera not been present.

Nor was the minor the initiator of "sexually explicit" conduct. Even though she exposed her unclothed pubic area for a short time while getting dressed, she obviously was not acting "for the purpose of sexual stimulation" of any viewer. It follows that the record is insufficient to show "sexually explicit" conduct, and that the conviction must be reversed.

I make two more comments before closing. The dissent, it seems to me, fails to distinguish the purpose of the defendant from the purpose of the initiator of the minor's conduct. I have no quarrel with the proposition that the defendant's purpose in this case was to sexually stimulate

himself. That, however, does not make the minor's conduct "sexually explicit," where the minor, as the initiator of the conduct, did not know Chester was watching and had no purpose related to anyone's sexual stimulation. To hold otherwise would make innocent conduct "sexually explicit" due only to an unknown observer's warped state of mind.

Additionally, I distinguish *State v. Myers*, 82 Wn. App. 435. The record in *Myers* supports inferences that *the defendant* was initiator of the minor's conduct, and that he was acting "for the purpose of sexual stimulation of the viewer," *i.e.*, himself.

In summary, the drafters of RCW 9.68A.040 and its related definitions meant to distinguish between exploitation and voyeurism by requiring that an "exhibition" of the minor's genital or rectal areas be "for the purpose of sexual stimulation of the viewer." The present record does not support a reasonable inference of any such purpose. Thus, it is insufficient to prove "sexually explicit" conduct, and I agree with Judge Bridgewater that the conviction must be reversed.

TURNER, J. (dissenting) — This sort of exploitation of innocence is exactly what the statute was designed to punish. The legislature found in RCW 9.68A.001 "that the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance. The care of children is a sacred trust and should not be abused by those who seek . . . personal gratification based on the exploitation of children." "An act should be construed to effect its purpose." *State v. Richardson*, 81 Wn.2d 111, 117, 499 P.2d 1264 (1972).

Chester breached his duty of care and violated the trust of his stepdaughter for personal gratification based on sexual exploitation of the child. His conviction should be affirmed if:

(1) he invited, caused or permitted his minor stepdaughter to engage in the exhibition,

(2) for the purpose of his (the viewer's) sexual stimulation.

"Exhibition" means "an act or instance of showing." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 796 (1968). But for Chester's activity in placing the camera, his step-daughter's actions would have been private. Chester caused, permitted or invited his step-daughter's private nudity to become an exhibition.

This court said in *State v. Bohannan*, 62 Wn. App. 462, 469, 814 P.2d 694 (1991) that "any person of common understanding would know that causing photographs to be taken of a nude 16-year-old girl would fall within the proscription of RCW 9.68A.040(1)(b) and .011(3)(e)".

The *Bohannan* court went on to say "an individual could take sexually explicit photographs of a child at a time when the child was unaware that the pictures were being taken. Under those circumstances, the photographer could still be found guilty of sexual exploitation of a minor . . . if he were to use . . . the photographs 'for the purpose of sexual stimulation of the viewer.' " *Bohannan*, 62 Wn. App. at 472.

As shown by *Bohannan* and a common-sense reading of the statute, sexual purpose on the part of the victim is not required. Younger children, especially, would be incapable of sexual intent or purpose. The perpetrator can cause, invite or permit innocent nudity to become an exhibition for the purpose of his or another viewer's sexual stimulation. Nor does the statute require that the perpetrator actively pose the victim or otherwise initiate the underlying behavior. He need only to cause or invite exhibition of the behavior.

In the case of a parent or guardian, having an affirmative duty to protect the child, he need only "permit" the exploitation to occur.

That the victim's purpose was innocent has no bearing on Chester's guilt under the plain meaning of this statute. Nevertheless, nude photography of a minor is not, in and of itself, criminal. The statute requires that it be "for the

purpose of sexual stimulation." The jury specifically found that Chester committed the crime with sexual motivation. Substantial evidence was presented on the issue of sexual purpose to support the jury's verdict.

This statute prohibits neither nude photography of a minor nor sexual peeping alone. Both elements are present here, however. Chester set the stage for innocent nudity to become an exhibition for the purpose of his sexual stimulation. The jury's verdict should stand.

Review granted at 130 Wn.2d 1016 (1996).